IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| DR. MARK G. TURNER, DDS, PC, and | ) | |
| DR. MARK G. TURNER, DDS in his | ) | |
| Individual capacity, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:17cv527–HEH |
| | ) | |
| DENTAQUEST, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION
### (Granting Defendant Dentaquest's Motion to Dismiss)

This matter is before the Court on Defendant Dentaquest, LLC's ("Dentaquest")

Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 40.)

The Complaint (ECF No. 1) contains three counts against Dentaquest: one count alleging

a violation of the Sherman Act and two counts alleging violations of Virginia law. All

parties have filed memoranda supporting their respective positions.[1] The Court will

dispense with oral argument because the facts and legal contentions are adequately

presented in the materials before the Court, and oral argument would not aid in the

decisional process. E.D. Va. Local Civ. R. 7(J).

For the reasons stated herein, the Court will grant the Motion to Dismiss. Count

One will be dismissed with prejudice. The remaining counts under Virginia law will be

dismissed without prejudice.

---

[1] The long and vexatious procedural history that led to the present Motion becoming ripe for adjudication is detailed in this Court's Memorandum Order entered June 11, 2018. (ECF No. 43.)

# I. Background

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true and views all facts in the light most favorable to him. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Viewed through this lens, the facts are as follows.

Plaintiff Dr. Mark G. Turner, DDS[2] ("Plaintiff") was a dentist in the Roanoke, Virginia area during the period relevant to the Complaint. (Compl. ¶ 1.) From 2008 to 2014, Plaintiff treated Medicaid patients in the Smiles for Children ("SFC") program pursuant to an agreement with Defendant Dentaquest, LLC. (*Id.* ¶¶ 2–3.) Plaintiff initially brought this action against Defendants Virginia Department of Medical Assistance Services ("DMAS"), Dr. Tonya Parris-Wilkins, DDS ("Parris-Wilkins"), Dr. David Black, DDS ("Black"), Dr. Terry Dickinson, DDS ("Dickinson"), Dr. Greg Harvey, DDS ("Harvey"), and Dentaquest; however, all Defendants but Dentaquest have been dismissed from this action.

DMAS is the Virginia agency tasked with overseeing the SFC program and contracted Defendant Dentaquest to administer and supervise the program. (*Id.* ¶ 6.) DMAS is managed by the Secretary of Human Resources and a Director of Medical Assistance Services, who is appointed by the Governor and subject to confirmation by the General Assembly. Va. Code Ann. § 32.1-323. Additionally, DMAS has an eleven-

---

[2] This action is brought by Plaintiff "both in his individual capacity and through his corporation that he did business" through. (Compl. ¶ 20.)

member board ("DMAS Board"), which is comprised of five members who are health care providers and six members who are not health care providers. Va. Code Ann. § 32.1-324(A). The DMAS Board formulates and submits a plan for the provision of medical assistance services to the U.S. Secretary of Health and Human Services in accordance with Title XIX of the Social Security Act. Va. Code Ann. § 32.1-325(A). The Director of Medical Assistance Services is empowered to administer this plan and to "enter into all contracts necessary or incidental to the performance of the Department's duties and execution of its powers as provided by law." Va. Code Ann. § 32.1-325(D)(1).

The SFC program is split into two parts: one component of the program is dedicated to treating patients up to the age of twenty one and the other component focuses on treating patients that are over the age of twenty one. (Compl. ¶ 4.) Plaintiff "worked exclusively with the Over 21 portion" of the SFC program. (*Id.*) During his involvement with the SFC program, Plaintiff operated what was likely "the largest safety net adult Medicaid practice in Virginia" and "was treating at least 75% of the eligible Medicaid adults receiving treatment in the Roanoke Valley." (*Id.* ¶ 10.) The patients Plaintiff treated under the SFC program formed the entirety of his practice. (*Id.* ¶ 3.)

The Roanoke-based Mission of Mercy Clinic ("MOM") was a project of the Virginia Dental Association ("VDA") that provided "free, volunteer traveling dental" services to the same segment of the population as Plaintiff. (*Id.* ¶¶ 13–14.) Dickinson, the Executive Director of the VDA, and Black, a VDA board member, are founders of MOM, and Black serves as its Dental Director. (*Id.* ¶¶ 13, 27.) Plaintiff claims that

competition with the MOM was detrimental to his practice, but he also credits his dental practice as a "contributing factor [to] the Roanoke Mission of Mercy going out of business." (*Id.* ¶ 42.) The MOM's financial model proved unworkable, and, sometime after September 2012, the program was reorganized into a Mini-MOM concept, which was "fully endorsed" by the VDA. (*Id.* ¶¶ 14, 42, 44.)

In January 2014, Defendant Dentaquest ended Plaintiff's eligibility under the SFC program by terminating Plaintiff's contract "without cause." (*Id.* ¶¶ 21, 45.) Starting in 2014, Commonwealth Dental Clinic ("CDC"), which is owned by Harvey, became the only "provider[] for Adult (Over 21) Medicaid dental services in Western Virginia." (*Id.* ¶ 66.)

Plaintiff alleges that the "defendant dentists exercised their market power to push the Plaintiff out of his dental market niche, and out of business" and that DMAS and Dentaquest "knew there was antitrust activity" and took action that led to "further cover up and concealment of Defendants' actions against [Plaintiff]." (*Id.* ¶¶ 18, 54–55.) Specifically, Plaintiff claims that, in downsizing from the financially inviable MOM, Defendants agreed to provide treatment to non-Medicaid-eligible patients at the Mini-MOMs and funnel all Medicaid-eligible patients to Harvey's CDC. (*Id.* ¶¶ 14, 18, 43.) Plaintiff further alleges that "Harvey agreed to absorb the Over 21 Medicaid practice of Plaintiff on the condition that he would not have to compete directly with Plaintiff." (*Id.* ¶ 48.) As such, Plaintiff alleges that Dickinson, Black and Harvey "joined together . . . to put [Plaintiff] out of business in the Medicaid [SFC] program." (*Id.* ¶ 18.)

As mentioned above, Defendant Dentaquest terminated Plaintiff's contract, ending

his eligibility under the SFC program. (*Id.* ¶¶ 21, 45.) Plaintiff does not contend that

Defendant Dentaquest lacked the contractual right to terminate his contract.[3] Instead,

Plaintiff alleges that Defendant Dentaquest "did not act independently," that "DMAS

sought the Plaintiff's termination based upon the advice of Defendants Terry Dickinson,

David Black and/or Greg Harvey," and that Defendant Dentaquest notified Plaintiff's

patients of his termination before the deadline for his appeal had passed. (*Id.* ¶¶ 45, 46,

61.)

Plaintiff alleges that Dickinson communicated the progress of Plaintiff's

termination to Black; that Black and Harvey purchased a building to house CDC prior to

Plaintiff's termination "*with the knowledge and intent* . . . that one of their main

competitors ([Plaintiff]) would be eliminated by Defendant Dentaquest"; and that the

VDA, led by Dickinson, supported the CDC despite "not support[ing] the Over 21

Benefit in the past." (*Id.* ¶¶ 24, 35, 47.)

Plaintiff asserts a cause of action under Section One of the Sherman Act and

alleges that the relevant service market is:

> (1) adult (over 21) dental services recognized under the Medicaid
> approved *Smiles For Children* program; (2) tooth extractions and
> related services, as identified under Medicaid approved Over 21
> *Smiles For Children* program; and (3) Medicaid approved services for
> the Over 21 members of the *Smiles For Children* program in Western
> Virginia, and within a two hour drive of Roanoke, Virginia.

(*Id.* ¶ 56.) Plaintiff claims that, as a result of Defendants' anticompetitive actions,

dentists have been deterred from entering the market and there has been a significant

---

[3] Plaintiff's asserted cause of action in the fifth count of the Complaint indicates that Plaintiff's contract
with Defendant Dentaquest was "terminable at will." (Compl. 31.)

reduction in the availability of dental services. (*Id.* ¶ 64.) Further, CDC will continue to exercise its "influence" to maintain a "monopoly" over the market. (*Id.*) Plaintiff also claims that he has been "directly harmed" by Defendants' anticompetitive conduct and continues to suffer "significant economic and financial loss." (*Id.* ¶ 67.)

Plaintiff previously brought a nearly identical action against a nearly identical cast of defendants in the United States District Court for the Western District of Virginia. *See Turner v. Va. Dep't of Med. Assistance Servs.*, 230 F. Supp. 3d 498 (W.D. Va. 2017) (hereinafter "Western District Case"). After considering Plaintiff's arguments, the Honorable Judge Jackson L. Kiser granted the defendants motions to dismiss and dismissed the action without prejudice. Additionally, on March 19, 2018 this Court previously dismissed all of Plaintiff's claims against all Defendants in the current action but Dentaquest. (*See* Order, ECF No. 28.) Specifically, the Court found that Plaintiff failed to plausibly allege a contract, combination, or conspiracy and failed to establish the antitrust standing required to bring a Sherman Action. (*See* March 19 Opinion, ECF No. 27.) Because the Court's jurisdiction over Plaintiff's claims under Virginia law was supplemental to the federal question jurisdiction invoked by his Sherman Act claim, these claims were dismissed as well.

## II.    Standard of Review

Generally, a court considering a motion to dismiss is both informed and constrained by the four corners of a complaint. However, the court may properly consider documents that are attached to the complaint, Fed. R. Civ. P. 10(c), and take judicial notice of matters of public record, *Sec'y of State for Defence v. Trimble*

*Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). The task at hand is to determine the sufficiency of the Complaint, "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, a plaintiff's well-pleaded allegations are taken as true and the complaint must be viewed in the light most favorable to the plaintiff. *T.G. Slater & Son, Inc.*, 385 F.3d at 841.

Nevertheless, "in the event of conflict between the bare allegations of the complaint and any exhibit attached . . . the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991). The so-called "exhibit-prevails" rule is only applicable when a plaintiff relies on an exhibit to form part of its claim, such that a court can presume plaintiff "has adopted as true the contents of the document." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166–67 (4th Cir. 2016).

A court "need not accept the legal conclusions drawn from the facts," nor must the court "accept as true unwarranted inferences, unreasonable conclusions or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). To survive Rule 12(b)(6) scrutiny, a plaintiff must provide more than merely "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," stating a claim that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570 (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

*Twombly*, 550 U.S. at 556).

### III. Discussion

### 1. Sherman Act Claim

Section 1 of the Sherman Act provides that "[e]very contract, combination in the

form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the

several States, or with foreign nations, is hereby declared to be illegal." 15 U.S.C. § 1.

"To establish a § 1 antitrust violation, a plaintiff must prove '(1) a contract, combination,

or conspiracy; (2) that imposed an unreasonable restraint on trade.'" *N.C. State Bd. of*

*Dental Exam'rs v. FTC*, 717 F.3d 359, 371 (4th Cir. 2013) (quoting *Dickson v. Microsoft*

*Corp.*, 309 F.3d 193, 202 (4th Cir. 2002)). The relevant inquiry for determining the

presence of a contract, combination and conspiracy that restrains trade "is whether the

challenged anticompetitive conduct 'stem[s] from independent decisions or from an

agreement, tacit or express.'" *Twombly*, 550 U.S. at 553 (quoting *Theatre Enters., Inc. v.*

*Paramount Film Distrib. Corp.*, 346 U.S. 537, 540 (1954)). In *Twombly*, the Court

clarified that mere conclusory claims of an agreement, even when paired with allegations

of parallel conduct, are insufficient to satisfy the contract, combination or conspiracy

aspect of a § 1 antitrust claim. *Id.* at 553–55.

The Fourth Circuit recognizes three forms of analysis for determining whether an

action amounts to an unreasonable restraint on trade: "(1) per se; (2) quick-look; and (3)

rule of reason." *N.C. State Bd. of Dental Exam'rs*, 717 F.3d at 373 (citations omitted).

"In all cases, however, 'the criterion to be used in judging the validity of a restraint on

trade is its impact on competition.'" *Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 509 (4th Cir. 2002) (quoting *NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 104 (1984)). Importantly, "'[t]he elimination of a single competitor standing alone, does not prove [the] anti-competitive effect' necessary for a Sherman Act violation." *Petrie v. Va. Bd. of Med.*, 648 F. App'x 352, 356 (4th Cir. 2016) (quoting *Military Servs. Realty, Inc. v. Realty Consultants of Va., Ltd.*, 823 F.2d 829, 832 (4th Cir. 1987)).

Additionally, once a plaintiff demonstrates a violation of § 1, he must prove that he suffered an antitrust injury: the type of injury that "the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). This requirement stems from the enduring principle that antitrust laws were enacted for "the protection of *competition*, not *competitors*." *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962).

Not all harms that flow from an antitrust violation are compensable under the antitrust laws. Though an injury may be "causally related to an antitrust violation, [it] nevertheless will not qualify as [an] antitrust injury unless it is attributable to an anticompetitive aspect of the practice under scrutiny." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) (internal quotations omitted). In essence, "a plaintiff must show that the net effect of a challenged restraint is harmful to competition." *Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d at 508. Identifying an antitrust injury is a necessary component of demonstrating standing to bring an antitrust action.

*Kloth v. Microsoft Corp.*, 444 F.3d 312, 323 (4th Cir. 2006).

For the reasons previously identified by the Court, (*see* March 19 Op. 16–19), Plaintiff has failed to plausibly allege that the individually-named Defendants entered into a contract, combination or conspiracy with either DMAS[4] or Dentaquest that led to his termination. In fact, Plaintiff's deficiencies with regard to Dentaquest are even more glaring. Notwithstanding his generic allegations of an agreement amongst all Defendants, Plaintiff specifically alleges that Dentaquest thought it was replacing him with a nonprofit entity, that Harvey agreed to absorb Plaintiff's practice only after every Defendant but Dentaquest agreed that Harvey wouldn't have to compete with Plaintiff, and that Dentaquest had knowledge of the other Defendants' conspiracy at his termination appeal—i.e., after Dentaquest had already terminated him. (Compl. ¶¶ 21, 29, 48, 54.) These specific contentions contradict any notion that Dentaquest conspired with the other Defendants to steal his dental practice.

Plaintiff instead directs the Court's focus to his exclusion from the Medicaid market since his contract was terminated in 2014. Again, Plaintiff fails to plausibly allege any agreement between the individually-named Defendants and DMAS or Dentaquest. This is crucial because neither DMAS nor Dentaquest compete in the

---

[4] As evidence of the communication amongst the individually-named Defendants and DMAS with regard to Plaintiff's termination, Plaintiff attaches Exhibit T. (ECF No. 1-23.) This exhibit shows that Defendant Dickinson was in an email thread in which he was informed of Plaintiff's impending termination; however, the thread does not show him advising, encouraging, agreeing or otherwise ordering that the termination occur. Additionally, another email in the thread from a DMAS official reveals that Plaintiff was terminated due to concern that Plaintiff presented a "liability given his staffing situation, [and] 17 complaints in 5 years." (Ex. T at 5.) In accordance with the exhibit-prevails rule, it is likely that this statement can be relied on for its truth to the detriment of any contrary allegations in the Complaint. *See Goines*, 822 F.3d at 166–67. That said, given the clear deficiencies of Plaintiff's Sherman Act claims, the Court need not rely on this statement in its analysis.

relevant service market—they administer it. While Plaintiff has sufficiently pled that Dentaquest has excluded him since his termination and that it did so based upon its contract with DMAS to administer the SFC program, there is no plausible suggestion that his exclusion came as part of an *unreasonable* restraint on trade.[5] In fact, absent his conclusory allegations that the exclusion was ordered at the direction and for the benefit of the individually-named Defendants, there is nothing to indicate that these circumstances are anything but the typical administration of a government program.

Largely related to this, Plaintiff fails to allege an antitrust injury. Plaintiff's loss of his "niche" practice due to the decision to terminate his contact and to contract with a replacement service provider is not the type of injury that the antitrust laws were designed to prevent. The Complaint contains no plausible allegations that this action by Dentaquest taken at the direction of DMAS will produce anticompetitive results in the relevant market. Plaintiff's contention that his termination will serve as a deterrent to others seeking to enter the market is a conclusion that is not tethered to any specific factual allegations. Moreover, while Plaintiff's removal as a service provider may have had the effect of shutting him out of the Medicaid market, that is the natural consequence of substituting one contractor for another. *Drs. Steuer & Latham, P.A. v. Nat'l Med.*

---

[5] This Court previously found that DMAS was entitled to state action immunity in this case because it operated as a prototypical state agency and terminated Plaintiff based upon a clearly articulated state policy. (March 19 Op. 11–15.) Given Plaintiff's reliance on the theory that his termination by Dentaquest was explicitly ordered by DMAS, it is clear that Dentaquest was subject to active state supervision. Taken together, it seems likely that Dentaquest would also be entitled to state action immunity in this case. *See FTC v. Ticor Title Ins. Co.*, 504 U.S. 621, 633 (1992) ("[W]hile a State may not confer antitrust immunity on private persons by fiat, it may displace competition with active state supervision if the displacement is both intended by the State and implemented in its specific details."). However, because this issue was not raised by Dentaquest or subject to briefing, the Court will not rest its decision on such a determination.

*Enters.*, 672 F. Supp. 1489, 1502 (D.S.C. 1987). "Merely changing exclusive contractors, however, cannot constitute a violation of the antitrust laws." *Id.*

The core of Plaintiff's alleged injury is that he was previously able to provide service to the vast majority of Medicaid eligible patients through his contract with Dentaquest; "he may not now complain that someone else enjoys a similar position." *Shafi v. St. Francis Hosp.*, Nos. 90-3107, 90-3117, 1991 U.S. App. LEXIS 15232, at *10 (4th Cir. July 16, 1991).

Additionally, in *Brunswick* the Court made clear that a plaintiff cannot claim an antitrust injury if his alleged loss would have resulted even without an antitrust violation. 429 U.S. at 488–89; *see also SCPH Legacy Corp. v. Palmetto Health*, 724 F. App'x 275, 276–77 (4th Cir. 2018) (affirming the district court's determination that the plaintiff failed to plead an antitrust injury because the alleged injury would have been caused regardless of who made the challenged acquisition). In this case, Plaintiff's contract was terminable by either party without cause. Plaintiff's alleged injury stems from the termination of his contract and Harvey's practice filling the coverage gap created by his termination. According to Plaintiff, this has had the effect of shutting him out of the relevant market. But, because Plaintiff narrowly defines the relevant market as participation in the Over 21 SFC program, any termination by Dentaquest would have resulted in Plaintiff's exclusion from the relevant market. In essence, he is attempting to use the Sherman Act to make an end-run around his at-will contract. The antitrust laws were not created to protect against this type of injury.

Plaintiff failed to allege the requisite agreement to restrain trade and failed to

demonstrate that he suffered an antitrust injury. At this point, Plaintiff has had ample opportunity to plead his antitrust claims in both this Court and in the Western District Case. As such, the Sherman Act claim will be dismissed with prejudice

**2.    State Law Claims**

In addition to his claim under the Sherman Act, Plaintiff alleges two counts against Dentaquest under Virginia law. The Court's original jurisdiction over this action stems from the presence of a federal question based upon the Sherman Act count. 28 U.S.C. § 1331. Now that the sole federal question presented in this case has been dismissed, the Court declines to exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). As such, the remaining state law counts will be dismissed without prejudice.

### IV.    Conclusion

For the foregoing reasons, the Defendant's Motion will be granted and the Complaint will be dismissed. Plaintiff's Sherman Act claim will be dismissed with prejudice and his Virginia law claims will be dismissed without prejudice. This case will be closed.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: **August 9, 2018**
Richmond, VA